ROBERT L. BLAND, Judge.
Claimant Hale Electric Company, Inc., a Pennsylvania corporation, with principal office in the city of Pittsburgh, and duly qualified to hold property and transact business in the state of West Virginia, seeks an award against West Virginia state board of education for $9,659.02. Its claims is divided into two items, one for the sum of $3,274.36 and the other in the sum of $6,384.66.
The two and one-half million dollar project of the West Virginia state board of education for the construction and equipment of a science hall on the campus of Marshall college, a state-controlled educational institution located in the city of Huntington, was divided into seventeen different contracts, according to plans, specifications and drawings made by L. D. Schmidt, registered architect, of Fairmont. Pursuant to its duly published advertisement, inviting proposals for these various contracts, sealed bids were opened at the board’s office in the state capitol, in the city of Charleston, on the 4th day of December, 1947. Claimant had submitted two bids, one on contract No. 7, which according to the architect’s instructions to bidders includes the general electrical installation, not including the general experimental laboratory equipment, section 29, paragraphs 17 to 45, both inclusive, but all others as shown on drawings E-l to E-16 both inclusive, and specified under section No. 29; and the other on contract No. 10, which includes the electrical experimental laboratory equipment as shown on drawings E-l to E-16, both inclusive, of section No. 29. Its bid on contract No. 7 was in the *96 sum of $178,293.00. Its bid on contract No. 10 was in the sum of $49,475.00. On the two contracts combined claimant was the lowest bidder. Contract No. 7 was awarded to claimant for the said sum of $178,293.00. Contract No. 10 was not awarded on account of limitation of funds.
It is the position of claimant Hale Electric Company that contract No. 7 provides that the contractor shall perform in a workmanlike manner all of the work described under Contract No. 7, which includes section 29 of the specifications and drawings E-l to E-16, inclusive, in connection with the general installation, but not including the electrical experimental laboratory equipment as specified under section No. 29, paragraphs 17 to 45, inclusive; and that contract No. 10 is a contract covering the furnishing of all necessary tools, labor and equipment to complete in a workmanlike manner all work required for the furnishing and delivering to the building site electrical experimental laboratory equipment.
Claimant maintains that it was its understanding that both contracts 7 and 10 would be awarded to it and that it confidently expected that contract No. 10 would ultimately be awarded to it. It contends that the architect as the agent of the state represented to its president that both contracts 7 and 10 would be awarded to the lowest bidder on the two contracts combined. It also contends that the state board of education had advised it by letter that it would later be awarded contract No. 10. However, when proposals were again invited on contract No. 10 claimant again submitted a bid, but it was not the lowest bid, and the contract was awarded to the Standard Electric Time Company, of Huntington, West Virginia. With knowledge of this fact claimant admits that it started to do work, as it contends, required to be done under contract No. 10. While testifying in support of the claim claimant’s president was asked the following question:
“Q — After you were awarded Contract No. 7, did you have to make any preparations to perform the work, and what did you do?” and answered:
*97 “A — Yes, we did. To begin with, we had to buy conduit and fittings necessary for both contract No. 7 and contract No. 10, because the conduits had to be installed simultaneously. For one thing, slabs, and in masonry, before slabs could be poured, both sets of conduit had to be placed, therefore we estimated sufficient conduit and fittings to do the roughing-in work for both contracts as the building progressed.”
The record of the claim is voluminous. The transcript of evidence consists of two hundred and fifty-seven pages. In addition to such evidence claimant introduced as its exhibit No. 1, a large volume, containing approximately three hundred and forty-five pages, prepared by architect Schmidt, and embracing all of the documents pertaining to the science hall project, such as advertisement for bids, instructions to bidders, the form of proposal, form of contract, specification, etc.
It was admitted by claimant’s president that all of the work performed by it under what it contends was required to be done under contract No. 10 was done subsequent to the time that it had notice of the fact that contract No. 10 had been awarded to Standard Electric Time Company. After contract No. 10 had been awarded as aforesaid, claimant ceased to do any further work on the electrical project. Respondent thereafter contracted with Harry Goheen or Goheen Electric Company to complete the work of connecting the experimental laboratory equipment at a cost of $3,274.36. When claimant submitted its final estimate respondent, at the instance of the architect, deducted from said estimate the said sum of $3,274.36 which it had paid to Goheen for connecting the experimental laboratory equipment on the ground that such work was provided to be done under contract No. 7. Claimant also contends that it is entitled to be compensated on a quantum meruit basis the reasonable value, that is to say the sum of $6,384.66 for the labor and materials which it furnished for laying the conduit for installing the special experimental laboratory equipment which it maintains was originally called for by contract No. 10.
During the progress of the hearing of the claim a number of objections were made, and urged with insistence, to the admissi *98 bility of evidence. The court’s rule 9 relates to proof governing testimony. The Court of Claims is not a court of law. It is expressly provided in the act of the Legislature creating the Court of Claims that it shall not be invested with or exercise the judicial power of the state in the sense of article eight of the consttiution of the state. As a special instrumentality and arm of the legislature its peculiar function is to investigate the merit of claims asserted against the state, or any of its agencies, and recommend the disposition of such claims. The court is not bound by the usual common law or statutory rules of evidence. The court may accept and weigh, in accordance with its evidential value, any information that will assist the court in determining the factual basis of the claims. Judge Charles J. Schuck, a former member of the Court of Claims, an able and distinguished lawyer, was wont to say, when objections were made to evidence, that members of the court were lawyers, or, at least had license to practice law and would endeavor to separate the “wheat from the chaff.”
Claimant agrees that the sole issue in the case is whether or not contract No. 7 which was awarded to claimant required claimant to lay the conduit for and otherwise install the special laboratory equipment referred to in paragraphs 17 to 45, inclusive, of section No. 29 of the specifications. Claimant contends that such installation was not included in contract No. 7 but was intended to be included in contract No. 10.
To establish the merit of its claim claimant bears the laboring oar. The claim has been presented with ingenuity and marked ability. Contract No. 7 reads in part as follows:
“WITNESSETH, That the Contractor and the Owner for the consideration stated herein agree as follows:
ARTICLE I, SCOPE OF WORK — The Contractor shall perform everything required to be performed and shall provide and furnish all of the labor, materials, necessary tools, contractors’ equipment, and all utility and transportation services required to perform and complete in a workmanlike manner all the work required for the GENERAL ELECTRICAL INSTALLATION, *99 NOT INCLUDING THE ELECTRICAL EXPERIMENTAL LABORATORY EQUIPMENT SPECIFIED UNDER SECTION 29, PARAGRAPHS 17 to 45 INCLUSIVE, as part of the construction of a Science Hall on the Campus of Marshall College, Huntington, West Virginia, Project of the Owner, all in strict accordance with the drawings and specifications, including any and all Addenda, prepared by L. D. Schmidt, Architect, acting and in these contract documents referred to as the Architect, which drawings and specifications are made a part of this contract, and in strict compliance with the Contractor’s proposal and the other contract documents herein mentioned which are a part of this contract; and the contractor shall do everything required by this contract and the other documents constituting a part hereof.”
This contract is a solemn and binding instrument. It means what it says. It will be observed that the plans, specifications and drawings made by the architect are by its express terms made a part of the contract. Recourse must necessarily from time to time be made to the drawings. Everything required to be done by the specifications is set forth on the drawings. In claimant’s proposal for Contract No. 7 we read: “Alternate No. 1-B. For special laboratory equipment install conduits only. Conduits to terminate at locations shown on drawings with metal caps installed at all openings. Where panel boards are to be installed all rough work shall be completed to provide for future installation of the mechanical panel board assemblies. Under contract No. 10 roughing-in panel board shells or bracket supports shall be supplied but installed under this contract.”
Claimant made a deduction of $464.00 from its contract since the assemblies were not to be installed. As evidence that the conduits are within the terms of contract No. 7, they are indicated on the architect’s drawings, and illustrated as E-l panel A. The drawings show a conduit extending from panel A to items indicated on the equipment as experimental outlets. From panel A lines on the drawings are also shown to indicate conduits to panel SP-l-la. Another conduit extends from panel A to the electrical laboratory panel, room No. 109. On the same drawing *100 there are in room G-10 additional experimental laboratory outlets which are indicated to connect to electrical panel A, in room G-13. In room G-46, physics shop, there are experimental outlets indicated and conduits shown, sizes indicated, etc., and noted to connect to electric panel A, in room G-13. This same condition continues on many of the sheets on drawings E-l to E-16.
Under date of December 22, 1947, H. K. Baer, secretary of the West Virginia board of education addressed a letter to claimant, reading as follows:
“Hale Electric Company, Inc.
1105 Washington Boulevard
Pittsburgh, Pennsylvania
Gentlemen:
We are returning herewith your bid proposal on Contract No. 10- — Electrical Experimental Laboratory Equipment, Marshall College Science Building — together with your bid bond in the amount of $5,000.
We regret to inform you that the West Virginia Board of Education cannot accept any bids under this contract due to limitations of appropriated funds for the erection and equipment of the Marshall College Science Building.
We appreciate your bidding on this part of the science building project and trust that when funds become available we may have the pleasure of negotiating with you on the equipment items listed in the plans and specifications for the completion of this building.
Very truly yours,
(Signed) H. K. Baer
fdv H. K. Baer, Secretary
enc. State Board of Education”
Nothing is observed in the letter that could be construed as a representation that claimant would be awarded contract No. 10. Contracts are awarded publicly and in the manner prescribed by law. The architect is not the general agent of the state board of education. He would have no power to bind the board beyond the scope of his employment as architect for the project.
*101 John E. Hale, president of claimant company, was the only witness who testified before the court in support of the claim. L. D. Schmidt, respondent’s architect, testified in resistence of the claim on behalf of the board. H. K. Baer, secretary of respondent, introduced as a witness at the instance of the court, but not examined by the state, testified that in writing the letter to claimant above quoted, it was not his intention or purpose to represent that contract No. 10 would be awarded to claimant.
All other evidence was of a documentary character consisting of numerous exhibits, including the large volume hereinbefore referred to which embraced the specifications for the project, instructions to bidders and various forms to be used in making proposals and entering into contracts, etc. The writer of this statement cannot forego this opportunity to commend the magnitude of this splendid volume, dealing as it does with the minutest details of the vast project of the science hall. It is, indeed, an outstanding evidence of architectural skill.
We see nothing in contract No. 10 that has anything to do with electrical installation. It deals solely with the furnishing and delivery of experimental laboratory equipment to the site. Contract No. 7 relates to the general electrical installation throughout the four floors of the science hall. The architect’s drawings are, we think abundantly sufficient to remove any doubt that claimant might have had as to what was required to be done under the terms of contract No. 7. The manifest purpose of the architect in contract No. 7 was, in the judgment of the writer, to advise prospective bidders that bids on contract No. 7 would not relate to furnishing the experimental laboratory equipment which was to be furnished and delivered to the building site under the terms of contract No. 10.
Claimant had a copy of the architect’s large volume containing specifications, etc., for approximately two months for inspection and study before making its proposals for contract No. 7 and contract No. 10.
Considering all the facts and circumstances developed upon the investigation and hearing of the claim we perceive no avenue *102 of escape from the conclusion that contract No. 7 awarded to claimant obliged claimant to do and perform everything for which it seeks an award in this proceeding.
The members of the court were much interested in their consideration of the excellent brief filed by learned counsel for claimant. It is regrettable that the court could not have had the benefit and assistance of a brief on the part of the state.
The burden of proof rests upon a claimant in the Court of Claims to show his claim against the state, or any of its agencies, to be meritorious and one for which the legislature should make an appropriation of public revenues in his favor for the satisfaction of such claim, and upon failure to successfully carry such burden, an award will be denied and the claim dismissed.
An award in this proceeding is, therefore, denied and the claim dismissed.